UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| AMANDA DAWN MASSENGILL, | ) | |
| | ) | |
| Petitioner, | ) | 2:21-CV-00165-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Amanda Dawn Massengill ("Massengill") asks the Court to vacate her sentence pursuant to 28 U.S.C. § 2255 because she claims she received ineffective assistance of counsel in violation of her constitutional rights [Doc. 1]. The United States has responded in opposition [Doc. 7] and the matter is now ripe for resolution. Because the record is adequate to address Massengill's claims, the Court will review and analyze them without an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993).

**I.  BACKGROUND**

On January 1, 2019, law enforcement officers found 11.59 grams of methamphetamine and other controlled substances in Massengill's pocket as they were booking her into the Hamblen County Jail [Doc. 42, ¶ 4]. On April 1, 2019, Massengill was traveling in a vehicle with her co-defendant, Thomas Harris ("Harris"), when law enforcement agents stopped Harris for an equipment violation and found 220.81 grams of marijuana packaged for resale, digital scales, and a loaded firearm in a vehicle [Doc. 42, ¶ 4].

On March 10, 2020, a federal Grand Jury indicted Massengill on four counts: (1) possession with intent to distribute at least 5 grams of methamphetamine; (2) conspiring to possess

with intent to distribute marijuana; (3) knowingly possessing a firearm in furtherance of a drug trafficking offense; and (4) knowingly possessing a firearm as a convicted felon [Doc. 1],[1] *see also* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(D); 18 U.S.C. §§ 924(c)(1)(A) and 2; and 18 U.S.C. § 922(g)(1). On June 12, 2020, Massengill was arrested pursuant to these charges [Doc. 25].

On September 24, 2020, Massengill entered into a plea agreement with the United States in which she agreed to plead guilty to possession with intent to distribute at least 5 grams of methamphetamine [Doc. 42]. In exchange for her guilty plea, the United States agreed to move the Court to dismiss the remaining counts against her. In the written plea agreement, Massengill stipulated that she "knowingly possessed more than 5 grams [of] methamphetamine[,]" and "did so with the intent to distribute it." [Doc. 42, ¶ 4 (a) and (d)]. She also stipulated to the presence of the firearm in the vehicle on April 1, 2019, and stipulated that "during the time set out in the indictment, she was involved in the distribution of illegal narcotics." [Doc. 42, ¶ 4]. On September 30, 2020, the Court accepted Massengill's guilty plea [Doc. 45].

In preparation for sentencing, the Court ordered a presentence report ("PSR"). The PSR determined that Massengill's base offense level was 24 [Doc. 67]. It then applied a two-level firearm enhancement based on the firearm recovered from Harris's vehicle and applied a three-level reduction for acceptance of responsibility, *see* U.S.S.G. §3E1.1(a), for a total offense level of 23 [Doc. 67, ¶¶ 17, 18, 24, 25]. Massengill had 32 criminal history points, placing her in a criminal history category of VI [*Id*. at ¶ 79]. The resulting guideline range was 92 to 115 months' imprisonment which included a statutory mandatory minimum sentence of five years [*Id*. at ¶¶ 107, 108]. Neither party filed any objections to these guideline calculations, and the Court adopted

---

[1] Unless otherwise specified, all record citations refer to the underlying criminal case, No. 2:20-CR-41.

the PSR without change [Docs. 68, 72, 82]. At her sentencing hearing on January 29, 2021, the Court sentenced Massengill to the bottom of the guideline range of 92 months [Doc. 81].

Massengill timely filed this motion to vacate her sentence, claiming ineffective assistance of counsel. In the motion, Massengill states that her "lawyer did not perform duties to reduce [her] sentence." [Doc. 95, ¶ 13]. In support of this claim, Massengill states the firearm was "not within reach or on or about [her] person," that the vehicle where the firearm and drugs were found was "not registered in [her] name," that she was not the driver of the vehicle, and that she did not receive a "psych eval." [Doc. 95, ¶ 12]. The Government has responded, arguing her counsel was not ineffective.

## II. STANDARD OF REVIEW

This Court must vacate a sentence if "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack…." 28 U.S.C. § 2255. The relief authorized by Section 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To obtain relief, a petitioner must establish (1) an error of constitutional magnitude; (2) a sentence outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceedings invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). This is a "significantly higher hurdle than would exist on direct appeal" because it requires the petitioner to show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

When a Section 2255 motion is based on purported ineffective assistance of counsel, the petitioner must establish two elements: (1) counsel's performance fell below an objective standard

of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceedings would have been different. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Under the first prong, there must be evidence that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). As to the second "prejudice" prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Griffin*, 330 F.3d at 736. The petitioner must establish counsel's constitutionally defective performance by a preponderance of the evidence. *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)). Still, a review of counsel's performance must be highly deferential and requires the courts to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

**III. ANALYSIS**

Massengill argues that her counsel was constitutionally ineffective for not arguing to reduce her sentence. Specifically, she claims her counsel was ineffective for not objecting to the firearm enhancement and for not having her undergo a psychological evaluation.

**A. Ineffective Assistance of Counsel - Firearm Enhancement**

Under U.S.S.G. § 2D1.1(b)(1), a two-level sentencing enhancement is added to defendant's base offense level if the defendant possessed a dangerous weapon. U.S.S.G. §2D1.1(b)(1). For the enhancement to apply, the government must prove two elements by a preponderance of the evidence. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020). First, it must show that "the defendant actually or constructively possessed the weapon." *Id*. (quoting *United States v. Hill*, 79

4

F.3d 1477, 1485 (6th Cir. 1996)). "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *United States v. Bish*, 835 F. App'x 858, 861 (6th Cir. 2020) (quoting *Hill*, 79 F.3d at 1485). Second, the government must show the defendant possessed the weapon during the commission of the offense or during relevant conduct. *Id.* "Relevant conduct includes 'all acts and omissions … that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(2)). And "in the case of jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," are considered relevant conduct. *Id.* If the government proves both elements, the burden shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense. To carry that burden, the defendant cannot rest on mere argument but "must present evidence … in order to meet his or her burden." *Id.* (quoting *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007).

Massengill faults counsel for not objecting to the application of this firearm enhancement because the firearm was not within her reach or on her person as she traveled with Harris, and that she was neither the owner nor the driver of the vehicle where the firearm and drugs were found. Her arguments are unavailing.

That she did not possess the firearm is not dispositive. The enhancement applies when another co-defendant possesses the firearm in connection with their jointly undertaken criminal activity provided that such possession was reasonably foreseeable. U.S.S.G. § 1B1.3(b)(1)(B). Here, Massengill stipulated that she and Harris were in the vehicle together, possessing methamphetamine with the intent to distribute it. She also stipulated the firearm was "hidden in the center console of the vehicle," along with a large quantity of drugs, digital scales, cash, and drug paraphernalia [Doc. 42, ¶ 4]. Thus, the firearm was connected to the drug trafficking activity

5

Case 2:21-cv-00165-DCLC-CRW   Document 8   Filed 02/28/22   Page 5 of 8   PageID #: 45

that she and Harris undertook together and its possession was reasonably foreseeable. That the firearm was hidden in the console and not on her person is of no consequence. This enhancement applies even when the firearm is constructively possessed.[2] *United States v. Foster*, 832 F. App'x 401, 404 (6th Cir. 2020) (affirming application of the firearm enhancement where defendant stipulated to the presence of a firearm, drugs, and scales in his car, though he disputed that he knew the firearm was in the trunk); *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (affirming application of the firearm enhancement when defendant stayed overnight in a home occupied by multiple individuals where there was no evidence that the defendant was aware there was a gun hidden on the premises).

Here, Massengill stipulated to the presence of drugs, paraphernalia, and the firearm in the vehicle, and admits that she was involved in the distribution of narcotics at the time of the traffic stop. This is enough to find she constructively possessed the loaded firearm in the center console. Moreover, even if she had a point that her counsel should have objected to the enhancement's application, she has not met her burden to show that it was "clearly improbable" that the weapon was connected to the offense. That is a burden she could not meet with the facts she agreed to in her plea agreement. With that, her counsel was not ineffective for not objecting to the enhancement.

**B.     Ineffective Assistance of Counsel – Psychological Evaluation**

Although Massengill asserts that she "did not receive a psych eval," she does not identify any basis that would justify one. Due process requires a psychological evaluation where there is "substantial evidence" of a defendant's incompetency or if a court has a reason to doubt a

---

[2]     In any event, the firearm's location in the center console of the vehicle weighs against Massengill's argument that the weapon was out of her reach since the center console could presumably be reached by both driver and passenger.

defendant's competence. *Medina v. California*, 505 U.S. 437, 449 (1992); *Pate v. Robinson*, 383 U.S. 375, 385 (1966). Here, Massengill's competence was never in question, so it was not unreasonable for her attorney not to request a psychological evaluation. In fact, the Court questioned her at the change of plea hearing and found her competent to enter her plea of guilty to the charge.

Nor has Massengill provided any facts to show that a psychological evaluation would have led to a reduced sentence. The PSR noted that Massengill had been diagnosed with a personality adjustment disorder and depression [Doc. 67, ¶¶ 98, 99], and her counsel argued that she had suffered from "untreated mental illness" her entire life [Doc. 77]. The Court fully considered these facts in determining the sentence. Thus, her mental health was presented to the Court. And, Massengill does not suggest that a psychological evaluation would have revealed further mitigating evidence. Accordingly, Counsel's failure to obtain a psychological evaluation was not deficient performance, and Massengill was not prejudiced by it.

### IV.   CONCLUSION

For the reasons set forth herein, the Court holds that Massengill has not shown she received ineffective assistance of counsel. Accordingly, her motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 is **DENIED** and the motion is **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473

(2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not conclude that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.

**SO ORDERED:**

                                              s/Clifton L. Corker
                                              United States District Judge